ROBERT A. PARKER AND MILES WHITE, APPELLANTS, *v.* WILLIAM OVERMAN.

A statute of Arkansas directs, that, where lands are sold by a sheriff, or other public officer, the purchaser is authorized to institute proceedings in a court, calling upon all persons to come in and show cause why the sale should not be confirmed.

Such a proceeding, when instituted in a state court and removed into the circuit court, conformably to the act of congress, constitutes a case over which this court will take jurisdiction.

In such petition for removal, it is not enough to allege that the petitioners were residents in another state. They must allege that they were citizens.

The statute makes the deed sufficient evidence of the authority, the description, and the price. The term "sufficient," is equivalent to *primâ facie.*

Before the sheriff can assess land, he is required to file an affidavit before a certain

day, and to file his assessment before another given day. A non-compliance with these requisitions makes the assessment, and of course the sale for taxes, invalid; and the deed must be set aside.

This was an appeal from the circuit court of the United States, for the District of Arkansas.

The case is stated in the opinion of the court.

It was argued by *Mr. William Shepard Bryan,* for the plaintiffs in error, and *Mr. Lawrence,* for defendant.

The points made by *Mr. Bryan,* which are decided by the court, were the following:—

1. That by the true construction of the act, such a deed is made evidence only of those facts which are recited in it.

2. That in order to establish the regularity and validity of a sale of land for taxes, the deed should show, upon its face, that every essential preliminary required by the statute has been performed.

3. That the deeds set out in the record, fail to recite several of these essential preliminaries; and that, therefore, they do not furnish evidence of the validity of the sale in question.

There are no recitals in the deeds, that the sheriff filed his assessment list, on or before March 25; that he gave ten days' notice in each township, that the list would be laid before the next county court; that he laid the list before the county court, at the term next succeeding March 25; that the court, at that term, adjusted this tax to be paid; that on or before the first Monday in August, he filed a list of the lands of non-residents with the auditor; that the list was corrected by the auditor, and advertised when corrected. 13 How. 472; 8 Eng. (Ark. Rep.) 242; 14 Pet. 322; 4 Wheat. 77; Arkansas Revenue Act, (Dig. c. 139, § 112.)

6. That all the testimony taken together (even if the incompetent testimony on the part of the petitioner be considered) shows that the sheriff and collector did not strictly pursue the authority to sell the land for taxes, given him by the revenue act, but that he omitted several important particulars.

He filed his assessment list too late; he neglected to give the ten days' notice required by law; he laid the list before the county court one term too late; and he was too late in filing with the auditor a list of the lands of non-residents.

*Mr. Lawrence :—*

The deed which was given in evidence was *primâ facie,* and, in the absence of positive proof of irregularity, conclusive evidence of the regularity and legality of the tax sale. Rev. Stats. c. 128, § 96, p. 687. Roberts v. Pillow, 13 How. 472.

By the 97th section of the Revenue act, p. 687, Rev. Stats., it is enacted, that "no exception shall be taken to any deed made by a collector," &c., "but such as shall apply to the real merits of the case, and are consistent with a liberal and fair interpretation of the intention of the general assembly."

It is insisted that no objection which is taken to the proceedings in this case has any merit, considered with regard to the intention of the general assembly.

So far as the proceedings connected with the sale are concerned, a strict compliance with the statute is shown.

The only want of compliance with the literal requirements of the act, is in the fact that the affidavit of the assessor, required by section 7, was not filed till the 15th March, 1845, and the assessment list was not filed in the office of the county clerk, on or before the 25th March, as required by section 26.

Dallas county was created by act approved January 1, 1845, which act passed the lower house, 24th December, 1844, and the senate, on the 28th of the same month.

By the 9th section of that act, an election was to be held on the fourth Monday of January, of all the officers necessary for the organization of the county, except justices and constables.

The first officers of Dallas county were sworn in about the 1st March, 1845.

The sheriff filed his affidavit as assessor, 15th March, 1845, and on the 28th April, 1845, filed his assessment list in the county court. The county court, at its first term, adjudged the list as required by law, and all the proceedings thereafter were in strict accordance with the revised statutes.

It is submitted, first, that the objection, that the assessor's oath was not filed on the 10th day of January, and the assessment list on the 25th of March, has no substantial merit, because the list was to be made out and filed, in order to be adjusted by the court, upon the appeal of any one aggrieved by the amount assessed on his property.

So far as regards the land in question, they were assessed at the lowest amount permitted by the law. Of course, no advantage would have happened from an earlier notice of that which he could not object to.

And, secondly, it is submitted that the act erecting Dallas county was a legislative suspension of such portions of the revised statutes as the act, by its requirements, rendered impossible.

Mr. Justice GRIER delivered the opinion of the court.

As some doubts were entertained, and have been expressed by some members of the court, as to its jurisdiction in this case,

it will be necessary to notice that subject, before proceeding to examine the merits of the controversy. It had its origin in the state court of Dallas county, Arkansas, sitting in chancery. It is a proceeding under a statute of Arkansas, prescribing a special remedy for the confirmation of sales of land by a sheriff or other public officer. Its object is to quiet the title. The purchaser at such sales, is authorized to institute proceedings by a public notice in some newspaper, describing the land, stating the authority under which it was sold, and " calling on all persons who can set up any right to the lands so purchased, in consequence of any informality, or any irregularity or illegality connected with the sale, to show cause why the sale so made should not be confirmed."

In case no one appears to contest the regularity of the sale, the court is required to confirm it, on finding certain facts to exist. But if opposition be made, and it should appear that the sale was made " contrary to law," it became the duty of the court to annul it. The judgment or decree, in favor of the grantee in the deed, operates " as a complete bar against any and all persons who may thereafter claim such land, in consequence of any informality or illegality in the proceedings."

It is a very great evil in any community, to have titles to land insecure and uncertain ; and especially in new States, where its result is to retard the settlement and improvement of their vacant lands. Where such lands have been sold for taxes, there is a cloud on the title of both claimants, which deters the settler from purchasing from either. A prudent man will not purchase a lawsuit, or risk the loss of his money and labor upon a litigious title. The act now under consideration was intended to remedy this evil. It is in substance a bill of peace. The jurisdiction of the court over the controversy is founded on the presence of the property ; and, like a proceeding *in rem*, it becomes conclusive against the absent claimant, as well as the present contestant. As was said by the court in Clark *v.* Smith, (13 Pet. 203,) with regard to a similar law of Kentucky : " A State has an undoubted power to regulate and protect individual rights to her soil, and declare what shall form a cloud over titles ; and having so declared, the courts of the United States, by removing such clouds, are only applying an old practice to a new equity created by the legislature, having its origin in the peculiar condition of the country. The state legislatures have no authority to prescribe forms and modes of proceeding to the courts of the United States ; yet having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed be substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no

reason exists why it should not be pursued in the same form as in the state court."

In the case before us, the proceeding, though special in its form, is in its nature but the application of a well-known chancery remedy; it acts upon the land, and may be conclusive as to the title of a citizen of another State.    He is therefore entitled to have his suit tried in this court, under the same condition as in other suits or controversies.

In the petition to remove this case from the state court, there was not a proper averment as to the citizenship of the plaintiff in error.    It alleged that Parker "resided" in Tennessee, and White in Maryland.    "Citizenship" and "residence" are not synonymous terms ; but as the record was afterwards so amended as to show conclusively the citizenship of the parties, the court below had, and this court have, undoubted jurisdiction of the case.

What we have already stated sufficiently shows the nature of the present controversy.    The decree appealed from "adjudges the absolute title to the land to pass and be confirmed to, and vest in, said William Overman, his heirs, &c., free, clear, and discharged from the claim of said defendants, and all persons whatsoever ; and that the said sale thereof for taxes, so made by the sheriff of Dallas county to said Overman, is hereby confirmed in all things, and said defendants perpetually enjoined from setting up or asserting any claim thereto, &c."

The plaintiffs in error allege that this decree is erroneous, and should have been for defendants below.

Much of the argument of the learned counsel in this case was wasted on the effect to be attributed to the recitals in the deed, and the decision of this court in the case of Pillow *v.* Roberts, 13 How. 472.

That was an action of ejectment, in which this court decided that, under the 96th section of the revenue law, the sheriff's or collector's deed was made *primâ facie* evidence of the regularity of the previous proceedings.    The effect of that section of the act, and of the decision in that case, was to cast the burden of proof of irregularity in the proceedings on the party contesting the validity of the deed ; but as the present controversy is for the purpose of giving an opportunity "to all persons who can set up any right or title to the land so purchased, in consequence of any informality or illegality connected with such sale," to contest its validity, it would be absurd to make the deed, whose validity is in question, conclusive evidence of that fact.    Consequently, the statute enacts that in this proceeding "the deed shall be taken and considered by the court as sufficient evidence of the authority under which said sale was

made, the description of the land, and the price at which it was purchased. The deed is to be received as *primâ facie* evidence of these three facts, and casts the burden of proof as to them on the defendant. The term "sufficient" is evidently used in the statute as a synonym for "*primâ facie*," and not for "conclusive."

In judicial sales under the process of a court of general jurisdiction, where the owner of the property is a party to the proceedings, and has an opportunity of contesting their regularity at every step, such objections cannot be heard to invalidate or annul the deed in a collateral suit. But one who claims title to the property of another under summary proceedings where a special power has been executed, as in case of lands sold for taxes, is bound to show every fact necessary to give jurisdiction and authority to the officer, and a strict compliance with all things required by the statute.

The principal objection to the regularity of the sale in this case, and the only one necessary to be noticed, is, that the land was not legally assessed. A legal assessment is the foundation of the authority to sell; and if this objection be sustained, it is fatal to the deed.

In order to qualify the sheriff to fulfil the duties of assessor, the statute requires that, "on or before the tenth day of January, in each year, the sheriff of each county shall make and file in the office of the clerk of the county an affidavit in the following form," &c.: "And if any sheriff shall neglect to file such affidavit within the time prescribed in the preceding section, his office shall be deemed vacant, and it shall be the duty of the clerk of the county court, without delay, to notify the governor of such vacancy," &c.

The statute requires, also, "that on or before the 25th day of March, in each year, the assessor shall file in the office of the clerk of the county the original assessment, and immediately thereafter give notice that he has filed it," &c. This notice is required, that the owner may appeal to the county court "at the next term after the 25th day of March, and have his assessment corrected, if it be incorrect." If the assessor shall fail to file his assessment within the time specified by this act, he is deemed guilty of a misdemeanor and subjected to a fine of five hundred dollars.

These severe inflictions upon the officer, for his neglect to comply with the exigencies of the act, indicate clearly the importance attached to his compliance in the view of the legislature, and that a neglect of them would vitiate any subsequent proceedings, and put it out of the power of the sheriff to enforce the collection of taxes by a sale of the property.

The record shows that Peyton S. Bethel, the then sheriff of

the county of Dallas, did not file his oath as assessor on or before the 10th of January, as required by law. He did file an oath on the 15th of March, but this was not a compliance with the law, and conferred no power on him to act as assessor. On the contrary, by his neglect to comply with the law, his office of sheriff became *ipso facto* vacated, and any assessment made by him in that year was void, and could not be the foundation for a legal sale. The neglect, also, to file his assessment and give immediate notice on the 25th of March, so that the purchaser might have his appeal at the next county court, was an irregularity which would have avoided the sale even if the assessment had been legally made.

The statute makes the time within which these acts were to be performed material; and a strict and exact compliance with its requirements is a condition precedent to the vesting of any authority in the officer to sell.

We are of opinion, therefore, that the sale of the land of the appellants was "contrary to law," and that the deed from Edward M. Harris, sheriff and collector of Dallas county, to William Overman, set forth and described in the pleadings and exhibits of this case, is void, and should be annulled.