## THE STATE, BAXTER, PROSECUTOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

1. The act of 1869, which extends the provisions of the second section of the act of March 25th, 1864, (*Nix. Dig.* 865) to deeds and declarations of sale under public or municipal authority, establishes a rule of evidence giving to the recitals the effect of proof, and prescribing the kind of evidence which shall be admitted to disprove the truth thereof. The only evidence competent for that purpose is the adjudication of the court to that effect on *certiorari* to review the proceedings on which the title is based.

2. Relief on *certiorari* being substituted for the defence the owner might previously have made in ejectment, the writ may be sued out at any time; but when prosecuted for such purpose, will bring up for review only such objections as would previously have been available in an action of ejectment.

3. The sale of lands for taxes or assessments is the execution of a naked power, and every requirement of the statute imposing the liability, and prescribing the procedure to enforce it, which is for the security of the owner, or for his benefit, must be strictly conformed to.

4. A legal assessment is the foundation of the authority to sell. An assessment which is illegal will not be aided by the ratification of the Common Council.

5. The charter of Jersey City of 1851, provided that the entire expense of street improvements should be assessed upon and paid by the lands benefited in proportion to the benefit received. An assessment which, by the report of the commissioners, is shown to have been made by assessing each lot with the amount of earth deposited in front of it at the price paid the contractor for the work, is not warranted by the law, and will not support a title made under a sale for the payment of the assessment.

On *certiorari* to set aside the proceedings for the sale of lands for the non-payment of assessments for street improvements.

Argued at November Term, 1872, before Justices WOODHULL, DEPUE and VAN SYCKEL.

For prosecutor, *J. Flemming* and *E. F. Hodges*, of Mass.

For defendants, *J. Dixon*.

The opinion of the court was delivered by

DEPUE, J. The lands in controversy were formerly the property of one S. P. Townshend. While he was owner, an assessment was laid upon them amounting to $16,786.84, for filling in Grand street, under the provisions of the charter of Jersey City. The ordinance directing the improvement to be made was passed on the 27th of September, 1853. The assessment for the costs and expenses was presented to the common council on the 6th of November, 1855, and ratified and confirmed on the 5th of January, 1856.

Townshend sued out a writ of *certiorari* in 1856, to remove the proceedings to this court. At the term of November, 1857, the assessment was set aside for substantial defects therein, and commissioners were appointed by the court to make another assessment. *State* v. *Jersey City*, 2 *Dutcher* 444.

The commissioners appointed by this court made a report of their re-assessment to the common council, which was confirmed.

The premises were set up at public sale for the payment of the assessment, and, for want of other purchasers, were sold to the treasurer of the city for the term of ten thousand years; and a declaration of sale was made thereon accordingly.

The prosecutor claims title under a mortgrge made by Townshend on the 1st of January, 1852, prior to the adoption of the ordinance for making the improvement; under which, by a foreclosure and sale, and sundry mesne conveyances, the title of the mortgagee became vested in the prosecutor.

The result of the action of this court, on the *certiorari* which was prosecuted by Townshend, was to affirm all the proceedings except the making of the assessment. The prosecutor insists that he is not concluded by the adjudication in Townshend's case, for the reason that the title under which he claims had passed out of Townshend, not only before the commencement of his suit, but also before the initiatory steps were taken by the common council for making the improvement. Among the reasons assigned now

for reversal are a number which were held to be untenable in the former case. It will not be necessary to determine in the present case the effect of the litigation instituted by Townshend upon the rights of his mortgagee, as defects are found in the proceedings after the conclusion of that suit, which will dispose of this case.

One of the reasons assigned for reversal is, that the re-assessment by the commissioners appointed by this court is fatally defective in that it appears by their report that the commissioners in making that assessment, proceeded upon principles not warranted by law.

It is conceded by the counsel of the city, that the assessment was made in violation of the city charter, and is illegal. The vexed question is, whether, at this late day, and upon this writ, the prosecutor is entitled to relief.

The report of the re-assessment was made to the common council on the 10th day of February, 1858, and confirmed on the 23d day of April, 1858. The sale was made on the 13th day of October, 1858. The writ in this case was not sued out until the 13th day of November, 1869.

The city has not conveyed the property to a third person, nor has any effort been made to take possession under the declaration of sale. In this condition of affairs the prosecutor filed a bill in the Circuit Court of the United States for the district of New Jersey, to remove the cloud from his title. This writ of *certiorari* is prosecuted in aid of that suit.

The act of April 2d, 1869, (*Acts*, 1869, *p.* 1238,)* which extends the provisions of the second section of the act of March 25th, 1864, (*Nix. Dig.* 865, § 61,)† to deeds, declarations of sale and conveyances under public or municipal authority, establishes a rule of evidence giving to recitals in conveyances under assessment sales, the effect of proof of the truth of the matters therein contained in actions in which the validity of such titles is in controversy, and prescribing the kind of evidence which shall be admitted by the court to disprove the truth thereof. The only evidence competent for that purpose, since the passage of the act, is the adjudication

*Rev., p. 1045, ₹ 15.   † Rev., p. 1045, ₹ 14.

of the court to that effect obtained on *certiorari;* that is, proof by the record in a procedure directly for the review of the proceedings on which the title is based. The statute does not purport to make valid titles which, on the face of the deeds or declarations of sale, appear to be regular. The question whether there is a legal foundation for the title is left open, notwithstanding the recitals, but the litigation of that question is transferred from the judge at the circuit, in the trial of the ejectment, to the Supreme (and apparently the Circuit) Court, in a different form of action.

The fact that no steps have been taken to obtain possession under the declaration of sale would, in accordance with the decision of this court, in *The State, Evans, pros.,* v. *Jersey City,* 6 *Vroom* 381, excuse the delay in suing out the writ. In the opinion in that case, it is intimated, that notwithstanding the language of the act of 1869, the writ will be dismissed in accordance with the practice of the court in other cases, if not taken out within a reasonable time. In view of the clear language of the act as to time, and the fact that relief on *certiorari* is substituted for the defence the owner might previously have made in ejectment, I think the better construction is, that with respect to such objections as were tenable in the ejectment, the owner is entitled to the writ of *certiorari* at any time, leaving the effect of a reversal to be determined in the action, if it shall appear possession has been held under the conveyance obtained by the sale for the period of time in which possession held adversely, will ripen into an indefeasible title.

The writ when prosecuted under such circumstances and for such purpose, will bring up for review only such defects as would previously have been available in an action of ejectment. The subject of inquiry then is, whether the defect in the assessment is one which, prior to the act of 1869, would have been fatal in the ejectment.

The sale of lands for taxes or assessments, is the execution of a naked power. Every requirement of the statute imposing the liability and prescribing the procedure to enforce

it, which tends to the security of the owner, or is for his benefit, must be strictly conformed to. No intendment will be made in favor of the legality of the proceedings. To support the title, the burden of showing compliance with the law, is on the purchaser. *Thatcher* v. *Powell's Lessee*, 6 *Wheat.* 119; *Ronkendorf* v. *Taylor*, 4 *Peters* 349; *Sharp* v. *Speir*, 4 *Hill* 76; *Sharpe* v. *Johnson*, *Ib.* 92; *Sherwood* v. *Reade*, 7 *Hill* 431; *Blackwell on Tax Titles* 34, 265.

. The principle is general in its application, in all instances in which property is divested, or authority exercised on it under special statutory powers. *The State* v. *Van Geison*, 3 *Green* 340; *Perrine* v. *Farr*, 2 *Zab.* 356; *Osborne* v. *Tunis*, 1 *Dutcher* 634.

In *The City of Camden* v. *Mulford*, 2 *Dutcher* 49, this court held, that if the common council had jurisdiction to pass ordinances for a certain purpose, as the paving of streets, an ordinance of that kind passed without a petition by the specified number of land owners, was a valid ordinance until set aside by legal proceedings brought for that purpose, and its validity could not be brought in question as a matter of defence to an action under it. This decision was followed in *Martin* v. *Carron*, 2 *Dutcher* 228, but the latter case was subsequently reversed in the Court of Errors. *Carron* v. *Martin*, 2 *Dutcher* 594. Some expressions in the reversing opinion seem to warrant the inference, that it was intended to deny the distinctions between objections that were remediable under the supervisory powers of the courts over municipal corporations, and defects which would be fatal when called in question collaterally. The principle established by the case is, that non-compliance by municipal corporations with the requirements of the charter with respect to the mode in which property shall be subjected to the expenses of public improvements, will make void a title acquired under its proceedings. The decision in Carron *v.* Martin has received un qualified approval in subsequent cases. *Phillips* v. *City of Hudson*, 2 *Vroom* 143; *State, Evans, pros.,* v. *Jersey City*, 6 *Vroom* 381, and cases cited.

A legal assessment is the foundation of the authority to sell. *Parker* v. *Overman*, 18 *How.* 142.

An assessment which is illegal will not be aided by a ratification of the common council. To make a valid title, there must be a legal assessment duly ratified. *Doughty* v. *Hope*, 3 *Denio* 595; *S. C.*, 1 *Comst.* 79.

At the time the duties of these commissioners were performed and their report was made, the charter of 1851 was in force. By the fifty-second section, as amended by the supplement of 1854, a board of four commissioners was to be appointed by the common council to ascertain the expenses of the improvement, and to make the assessments for the same. It was made the duty of these commissioners to ascertain the costs and expenses of the improvement, to examine into the whole matter, and to determine and make report in writing to the common council, what real estate ought to be assessed, and what proportion of the expenses should be assessed to each separate parcel or lot. By the same section, the entire expenses of the improvement were required to be assessed upon and paid by the lands and real estate benefited, in proportion to the benefit received. The object of prescribing this ratio of appointment, was the security of land owners from illegal and unconstitutional exactions, and the equalization of the burden imposed. No assessment, whether by the board of commissioners, or commissioners appointed in any other way, could lawfully be made, unless in conformity to the principle of apportionment prescribed. *The State* v. *Jersey City*, 4 *Zab.* 662; *The State* v. *Newark*, 1 *Dutcher* 400; *State* v. *Jersey City*, 2 *Ib.* 444; 4 *Ib.* 500.

The commissioners report that the principle on which the assessment was made, was by assessing to each lot the amount of earth deposited in front of it to the centre of the street, and also the proportionate share of the amount of earth deposited on the intersections. They state with particularity, the method of conducting their operations, and that by boring, and ascertaining loss by shrinkage and blowing off,

from information of persons living in the neighborhood, with the assistance of practical surveyors, they were relieved from all difficulties and doubts in ascertaining the quantity. The sum assessed upon each of the lots now owned by the prosecutor, was reached by charging sixty-seven cents for each cubic yard of earth deposited in front of the lot, adding a proportionate amount for intersections at the same rate, that being the price paid the contractor for the work.

The course pursued by the commissioners is so entire a departure from the explicit command of the charter, as that the assessment amounted only to an arbitrary exaction, in violation of the express provisions of the charter, and can receive no support from the only legislative power the city possessed, to compel the owners of lands to defray the cost of the improvement.

The defects are not in mere matters of form, in the proceedings of the commissioners. They enter into the very essence of the duties of their appointment. An assessment on the lands benefited, in proportion to the benefit received, is a jurisdictional fact, comprising the entire scope of the authority of the commissioners. The report shows that they never entered upon the performance of the duty imposed by the charter, and that the office they assumed was to obtain indemnity to the city for expenses incurred in the improvement, in a manner not warranted by the law. The result appears in the fact, that property comprising forty-six city lots, was transferred to the city for the term of ten thousand years; no purchaser being found to take it for a less term, and pay the assessment.

Lapse of time will not cure the defects in these proceedings. The cases cited by the defendant's counsel are all cases in which the court, before the act of 1869, dismissed writs of *certiorari* as improvidently allowed. *Haines* v. *Campion*, 3 *Harr.* 49; *The State* v. *Ten Eyck, Ib.* 373; *The State* v. *Water Commissioners,* 1 *Vroom* 247.

The Court of Errors has settled, as the law of this state, that in case of ancient deeds from mere lapse of time, a pre-

sumption will not arise, that public officers have performed the requirements of the statute under which the conveyance was made. There must be some other circumstance, such as possession, to warrant the presumption of compliance with the statute, even where the conveyance is a deed of above thirty years' standing. *Osborne* v. *Tunis,* 1 *Dutcher* 634.

The assessment and all proceedings thereunder are set aside.

The court will entertain an application for the appointment of new commissioners, if the defendants are advised that such appointment may be now made.

CITED in *State, Graham, pros.,* v. *Paterson,* 8 *Vr.* 380; *State, Speer, pros.,* v. *Passaic,* 9 *Vr.* 168; *State, Spear, pros.,* v. *Perth Amboy,* 9 *Vr.* 425; *State, Winants, pros.,* v. *Jersey City,* 13 *Vr.* 349; *Woodbridge* v. *State,* 14 *Vr.* 262; *Lehigh Valley R. R. Co.* v. *Newark,* 15 *Vr.* 323.