ROBINSON v. BAILEY.[1]

*(Circuit Court, N. D. Iowa, E. D.* November, 1885.)

1. TAX TITLE—TREASURER'S DEED—EVIDENCE.
   In an action to quiet title, under the provisions of section 897 of the Iowa Code, it is incumbent upon defendant to show that he has a title or interest in the land in dispute, before he can be permitted to question the validity of the title presumptively shown to be in complainant by the production of a treasurer's deed, executed in pursuance of a sale made for delinquent taxes, regular in form and execution; and that the case is tried on stipulated or agreed facts will not change the rule in that respect.

2. SAME—SWAMP LANDS—CONVEYANCE BY COUNTY BEFORE TITLE PERFECTED.
   Where, at the time a deed of swamp lands was issued, the county was prohibited by statute from issuing such deed until the title to the land was perfected in the county, a covenant of warranty in such deed will not inure to the benefit of the grantor, or a party to whom he has conveyed the land, and vest a good title in him when the title is finally perfected in the county.

In Equity. Bill to quiet title.

*Powers & Lucy,* for complainant.

*Henderson, Hurd & Daniels, A. F. Call,* and *Geo. E. Clarke,* for defendant.

SHIRAS, J. In this cause a decree for complainant was ordered at the November term, 1884, whereupon the defendant petitioned for a rehearing, which was granted, and the cause has been fully reargued by counsel.

---

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

The suit is brought for the purpose of quieting the title to certain realty situated in Pocahontas county, the complainant claiming title thereto under certain tax deeds executed by the treasurer of the county in pursuance of a sale made in October, 1876, for delinquent taxes assessed and levied on the lands for the years 1874 and 1875. The defendant claims title under John M. Stockdale, to whom the lands were conveyed by a warranty deed, executed by the county of Pocahontas in 1860; the said lands being part of the swamp lands granted to the state of Iowa by the act of congress of 1850. By an act of the general assembly of the state of Iowa passed January 13, 1853, the swamp lands granted to the state were granted to the several counties in which they were situated, and by an act passed in 1855 it was provided that such lands should not be sold or disposed of until the title was perfected in the state. The patents of the lands in question from the United States to the state of Iowa, and from the state to the county, were not issued until in 1876. On part of the defendant it is claimed that it does not appear that the lands were liable to taxation in the years 1874 and 1875, and that, consequently, the bill should be dismissed without inquiry into the right or title of the defendant.

By the provisions of section 897 of the Code of Iowa, it is enacted that, in all controversies or suits in relation to the rights of the purchaser to the land conveyed by a treasurer's deed, such deed shall be presumptive evidence "that the real estate conveyed was subject to taxation for the year or years stated in the deed." The introduction of the treasurer's deed, therefore, on behalf of complainant, made out a *prima facie* case on his part, which required to be overthrown by countervailing evidence on behalf of defendant.

Section 897 of the Code enacts that "no person shall be permitted to question the title acquired by a treasurer's deed, without first showing that he, or the person under whom he claims title, had title to the property at the time of the sale, or that the title was obtained from the United States or this state after the sale." Under the provisions of this section, before defendant could be permitted to question the validity of the title claimed by complainant as evidenced by the treasurer's deed introduced on his behalf, it was necessary for defendant to show that he had or held some interest or right in the premises, otherwise, as against him, the complainant would be entitled to a decree.

In the case of *Sully* v. *Poorbaugh*, 45 Iowa, 453, it appeared that the suit was brought to quiet the title to 120 acres of land, to which complainant, Sully, claimed title under a treasurer's deed, executed in pursuance of a sale made for delinquent taxes. The land formed part of the swamp lands conveyed to Jasper county. The defendant claimed that the lands were not subject to taxation for the year 1864, because they then belonged to the county. The defendant established a title in himself to 80 acres, but failed to do so as to the remaining

40 acres. The supreme court of Iowa held that the lands were not taxable for the year 1864, and that, as to the 80 acres to which defendant had shown title, the decree must be for defendant; but that, as to the remaining 40, there must be a decree for plaintiff, because defendant had failed to show a title therein authorizing him to question the right of plaintiff under his tax deed, the same being regular in form. See, also, *Lockridge* v. *Daggett*, 54 Iowa, 332; S. C. 2 N. W. Rep. 1033, and 6 N. W. Rep. 231; and *Parker* v. *Overmann*, 18 How. 137.

There can be, then, no question that, under the provisions of section 897, as construed by the supreme court of Iowa, it was incumbent upon defendant to show that he had a title or interest in the lands in dispute, before he could be permitted to question the validity of the title presumptively shown to be in complainant by the production of the treasurer's deed, regular in form and execution.

There is no force in the suggestion, on part of defendant, that this cause stands in a different position by reason of the fact that the evidence is mainly in the form of a stipulation or agreement reciting the facts. In all cases in equity the evidence is reduced to writing, and is on file before the cause is taken up for trial, and the facts in the one case just as much appear of record as in the other. The difference in form, between facts proven by proper evidence on record and facts admitted by a stipulation, can make no difference in the legal rights of the parties. The stipulation is merely evidence of the facts recited therein, and, so far as the point under consideration is concerned, the case is to be viewed just as it would be if both parties had taken testimony by deposition, instead of agreeing upon the facts. By the introduction, therefore, of the treasurer's deed, the complainant has established his right, *prima facie*, to a decree quieting his title as against defendant, and the burden is thereby cast upon the defendant of showing—*First*, title in himself; and, *second*, invalidity in the tax title.

The main ground relied upon in argument by defendant in support of the defense of invalidity in the tax sales is that, in the years 1874 and 1875, the title to the lands was in the state of Iowa, although the evidence of such title was not fully completed until the patent was issued, in 1876; that the title in the county was not completed until in December, 1876, when the patent from the state to the county was issued; and that, according to the provisions of the act of the general assembly of Iowa, passed in 1855, the unorganized counties of the state, of which Pocahontas county was then one, were restrained from selling the swamp lands donated to them by the previous act of 1853, until the title thereto was perfected in the state, and the expense incurred in selecting the same had been refunded to the state.

The act provides "that no swamp or overflowed lands granted to the state, and situate in the present unorganized counties, shall be sold or disposed of till the title to said lands shall be perfected in the

state, whereupon the titles to said lands shall be transferred to the said counties where they are situated: provided, that said counties shall refund to the state the expenses incurred in selecting said lands, under the provisions of 'An act,'" etc. Counsel for defendant claims that the act greatly changed the *status* of the swamp lands in the unorganized counties, and that under this act "the state retained the entire control of them, and the counties were prohibited from attempting to do anything with them until they got a title, as provided for in the act."

Admitting this to be so, what becomes of the title upon which defendant relies? It is admitted that the defendant claims only under a deed executed in 1860 by the county to one John M. Stockdale. When this deed was executed, the title to the lands had not been perfected in either the state or county, and therefore, by the express provisions of the act of 1855, if the same was then in force, the county was prohibited from selling or disposing of the lands. The contract for the sale of the lands, and the deed made in pursuance thereof, were therefore in violation of the express provisions of the statute, and were wholly void. No title in or right to the lands passed to the grantee, Stockdale, and, having acquired no title, he could convey none to his subsequent grantees, all of whom would be chargeable with knowledge of the invalidity and illegality of the attempted sale to Stockdale, in violation of the restrictive provisions of the act of 1855. The defendant, while maintaining, on the one hand, that his grantors had no title prior to the issuance of the patent to the county in 1876, claims, on the other, that when the title did vest in the county in 1876, it inured to his benefit, because the deed from the county to Stockdale in 1860 contained covenants of warranty. If such an effect should be given to the deed and its covenants, it would defeat the provisions of the act of 1855. That act prohibited the county from selling or otherwise disposing of the lands until the title was perfected in the state, which was not done until in 1876. The purchaser, Stockdale, knew, when he received the deed in 1860, that the county had no right to sell the land, being expressly prohibited from so doing. The deed was therefore void, and the covenants cannot be allowed to work out a result which the county was prohibited from doing by express provision of the law. If this were permitted, the statutory restriction could in every case be avoided simply by the device of procuring a deed with covenants of warranty.

It is not a case for the application of the doctrine that an after-acquired title will inure to the benefit of a grantee holding under a deed with covenants of warranty. That rule is applicable to cases wherein the grantor, having the power and legal right to contract for the conveyance of certain premises, executes a deed with convenants of warranty, yet, in fact, was not at the time possessed of the land, or of the full estate therein, which he assumed to convey, and of which he afterwards becomes seized. Under such circumstances, the

grantor would be estopped from asserting the rights acquired after the date of his deed, against the grantee therein. If, however, the grantor was under a legal disability, and consequently without the right to contract according to the provisions of the deed, then the covenants therein would not work an estoppel upon the grantor. Thus, the supreme court, in *Bank of America* v. *Banks,* 101 U. S. 240, ruled that, "in order to work an estoppel, the party to a deed must be *sui juris* competent to make it effectual as a contract. Hence a married woman is not estopped by her covenants."

In the present case, the contract made by the county for the sale of the lands, if the act of 1855 remained in force, was absolutely void, being prohibited by the terms of that act, and the county had no right to deed the lands, or to contract for the sale of the same in the future. Under such circumstances, the covenants in the deed cannot have the effect of validating the deed itself, nor the contract evidenced thereby; nor can they be given force by way of estoppel. The fact, therefore, that in the year 1876 the title to the lands was perfected in the state and county does not show that defendant then acquired a title, provided it be true, as claimed by counsel for defendant, that the act of 1855 was operative in 1859, when the contract for the sale of the lands was made by the county, and in 1860, when the deed thereof was executed to Stockdale, under whom defendant now claims title.

Assuming, therefore, that the position of defendant in regard to the act of 1855 being in force in 1859 and 1860 is correct, it follows that the claim of title relied upon by defendant is wholly void, and, having thus failed in showing that he had a title to the lands in dispute, defendant cannot, according to the provisions of the statute of Iowa, question the validity of the *prima facie* title established in complainant by the introduction of the treasurer's deed. The decree originally entered is therefore affirmed.

BREWER, J., concurs.