gate one by so doing, which one would have a perfect right to avoid in a proper action in equity.

Independent of the question of laches, we therefore reach the conclusion that the silence and conduct of the plaintiff must preclude him from the relief which he now seeks. Searching the substance, and not the form, we advance the thought that the plaintiff knew or must have known that the confusion complained of would follow his re-entry into business in the same locality under the same name, and he is therefore partially responsibile for the situation developed.

Decree may be entered in favor of the defendant, the injunction is dissolved, and the petition is dismissed at plaintiff's costs.

*Decree for defendant.*

LEMERT and MONTGOMERY, JJ., concur.

LEVENSON *v.* WOLFSON ET AL.

(Decided April 27, 1931.)

*Messrs. Dinsmore, Shohl & Sawyer* and *Messrs. Cohen, Mack & Hurtig,* for plaintiff.

*Mr. Joseph L. Meyer, Mr. Jack B. Dworken* and *Mr. Benjamin S. Schwartz,* for defendants.

Ross, P. J. This case is presented at this time on a motion to dismiss the appeal.

The proceeding in the court of common pleas was brought by virtue of the provisions of Sections 8572-1 to 8572-118, General Code, designated "Registration of Land Titles," and commonly known as the Torrens Act.

The right of appeal to this court is specifically authorized by the provisions of Section 8572-80, General Code.

It has been repeatedly held by the Supreme Court

that similar acts of the Legislature are wholly ineffective in themselves to confer appellate jurisdiction upon this court. *Commonwealth Oil Co.* v. *Turk,* 118 Ohio St., 273, 160 N. E., 856; *In Re Hawke,* 107 Ohio St., 341, 140 N. E., 583; *Thompson* v. *Redington,* 92 Ohio St., 101, 110 N. E., 652, Ann. Cas., 1918A, 1161; *Cincinnati Polyclinic* v. *Balch,* 92 Ohio St., 415, 111 N. E., 159.

It is contended that Section 8572-80, General Code, is vitalized by Section 40, Article II, of the Ohio Constitution: "Laws may be passed providing for a system of registering, transferring, insuring and guaranteeing land titles by the state or by the counties thereof, and for settling and determining adverse or other claims to and interests in, lands the titles to which are so registered, insured or guaranteed, and for the creation and collection of guaranty funds by fees to be assessed against lands, the titles to which are registered; and judicial powers with right of appeal may by law be conferred upon county recorders or other officers in matters arising under the operation of such system."

It is obvious that the language "judicial powers with right of appeal" refers not to any court, for such possess inherent "judicial" powers, but to county recorders and other officers similar to county recorders.

Section 6, Article IV, of the Ohio Constitution provides that the Court of Appeals shall have appellate jurisdiction in the trial of chancery cases. The question then presented is whether this proceeding under the Registration of Land Titles Act is a "chancery case."

Such an action was held so to be by the Court of Appeals of the Second District in the case of *Persinger* v. *Britton,* 10 Ohio App., 164, but the matter was disposed of with the bare statement: "From this judgment an appeal was taken by the plaintiff to this court. The right of appeal was sustained upon the ground

that the jurisdiction involved chancery relief and that the probate court was a court of record within the meaning of Section 6, Article IV of the Constitution."

The Supreme Court has also considered such a proceeding coming to it from a Court of Appeals, wherein it was heard on appeal. *Stewart v. Kellough,* 104 Ohio St., 347, at page 350, 135 N. E., 608. No question of the right to appeal was raised as far as the report of the case shows.

The main contention of the movement is predicated upon the assertion that such a proceeding is an action *in rem,* and that, as equity acts only *in personam,* such proceeding cannot be a chancery case.

As to the character of the proceeding, we are met at the outset by a statement of the Supreme Court in *Stewart v. Kellough, supra,* at page 358 of the opinion in 104 Ohio State, 135 N. E., 611, "The proceeding under the Torrens Law (Section 8572-1 *et seq.,* General Code) was a proceeding *in rem.* It is so designated in the act itself."

We presume that the reference to self-designation refers to the language used in Section 8572-22, where it is provided that the "decree of confirmation and registration shall be entered, which shall have the effect of a decree in rem."

Section 81 of the Act of April 27, 1896 (92 Ohio Laws, 239), reads: "The decree of the court ordering registration, shall be in the nature of a decree *in rem,*" etc. Yet the Supreme Court in *State of Ohio, ex rel., v. Guilbert, Aud.,* 56 Ohio St., 575, 47 N. E., 551, 38 L. R. A., 519, 60 Am. St. Rep., 756, held as to the act as then written that in spite of such self-designation, which it noted on page 609 of the opinion, it was emphatically not a proceeding *in rem.* Before quoting the language of the opinion, in which the entire act was carefully considered, it may be well to remark that such changes as have occurred in the new act under the constitutional amendment would not be

calculated to make the proceeding one *in rem,* if it were not so under the sweeping provisions of the old act applying to service of notice and scope of the decree.

Quoting from the opinion of the court in *State, ex rel.,* v. *Guilbert,* at pages 618 and 619 of 56 Ohio State, 47 N. E., 556:

"Is it such notice as the law of the land requires to be given to persons claiming interests in property of the pendency of a judicial proceeding, in which such interests are to be the subject of adjudication and in which, unless they appear, a decree will be entered precluding their further assertion? It is said that it is, because the proceeding to register land under the act is *in rem.* Whether it is *in rem* or *in personam* is determined by its nature and purpose. To say that the legislature may prescribe such notice as is appropriate to proceedings *in rem,* and thus invest the proceeding with that character, is to affirm its power to annul the constitutional requirement. In this aspect of the case, and considering the effect of registration upon interests adverse to those of the applicant, the proceeding to register does not, in any substantial respect, differ from a suit *quia timet* to settle title. It bears the least possible analogy to a proceeding *in rem.* The *res* is not taken into the possession of an officer of the court. No charge or lien is asserted against it.

"It is not to be sold with a view to the distribution of its proceeds, and it partakes, therefore, less of the nature of a proceeding *in rem* than does the foreclosure of a mortgage. The land is not a thing of shifting *situs* like a ship, against which obligations may accrue today in one jurisdiction and tomorrow in another. The status of the land is not changed by registration. The substantial thing determined by registration is that the person who makes the application has a right of property in the land to the exclusion of all other persons. The judicial force of the proceeding is wholly

expended in a conclusive determination of the rights of persons in the land. Except when the land is occupied by one who claims adversely to the application, the questions determined in registration are such as both before and since the adoption of the constitution have been determined by courts of equity; and their decrees much more distinctly than the judgments of courts of law operate upon persons."

We see no reason why this language is not still applicable to the act as it now exists.

The case of *Carino* v. *Insular Government of the Philippine Islands,* 212 U. S., 449, 456, 29 S. Ct., 334, 53 L. Ed., 594, has been cited as an authority upon the point, but an examination of the opinion of the court shows that, while the court designated as a proceeding *in rem* an action which it stated was similar, the Ohio statute was not considered, and that the court was influenced by the decision in the case of *Tyler* v. *Judges of the Court of Registration,* 175 Mass., 71, 55 N. E., 812, 51 L. R. A., 433, where the Massachusetts court held constitutional an act somewhat similar to the Ohio act held unconstitutional in *State* v. *Guilbert, supra.* The Massachusetts court stated, at page 77 of the opinion [55 N. E., 814]: "If, in fact, the proceeding is of that sort, and is to bar all the world, it is a proceeding *in rem."* The Massachusetts court also commented upon *State* v. *Guilbert, supra,* refusing to follow the reasoning of our Supreme Court, and arriving at an opposite conclusion.

The United States Supreme Court, 212 U. S., 449, 456, 29 S. Ct., 334, 335, in speaking of the act then under consideration, say: "It is nearer to law than to equity, and is an assertion of legal title; but we think it unnecessary to put it into either pigeon hole."

While courts differ upon this construction of the proceeding, even if the proceeding should be considered as a proceeding *in rem* or *quasi rem,* this we do not feel is conclusive in excluding it from equity

jurisdiction. Ruling Case Law, discussing the maxim, "Equity Acts *in personam,*" says in volume 10, at page 387: "But, as has been already seen, important as was this doctrine in the earlier stages of the development of equity jurisprudence, its operation has been greatly modified, and in most cases affecting the title to lands, entirely abrogated by statutes which have been passed in England and the United States. The power of the court to act *in personam,* however, has not been abrogated thereby, and it may still enforce its decrees in such a manner, as, for example, where the subject-matter of the controversy is situated in a foreign country and the parties to be affected are subject to the jurisdiction of the court."

As has been said by nearly all authorities, it is very much the same sort of a proceeding as an action to quiet title. While the method of notice to those interested is different from that of the ordinary summons, and the scope of the decree is broad in its effect, the essential purpose of the proceeding is to quiet the title to the land in the applicant. An action to quiet title has been held to be an action *in rem. Dennison Brick & Tile Co.* v. *Chicago Trust Co.,* 286 F., 818. This is a decision by the Sixth Circuit United States Court of Appeals, and construes the effect of the Ohio statutes providing for the quieting of titles. We quote from the opinion of the court, page 821:

"The substantial ground on which statutes providing for substituted service on nonresident defendants, in actions affecting real estate within the jurisdiction of the court, has been sustained is that such actions are *in rem,* or of that nature.

"In respect of classification as to proceedings *in rem* we can see no valid distinction in principle, on the one hand, between a proceeding to enforce a lien or foreclose a mortgage, and, on the other hand, to remove a lien or set aside a mortgage. Statutes of the latter character, equally with those of the former, act di-

rectly upon the *res,* the status of the title. Nor do we find any distinction upon authority. In Roller v. Holly, supra, a suit to enforce a vendor's lien, under a statute providing for substituted service on nonresident defendants, was impliedly held to be *in rem.* It was there said (176 U. S. 405, 20 Sup. Ct. 412, 44 L. Ed. 520) that the substance of certain decisions of the Supreme Court therein discussed is that 'if the plaintiff be in possession, or have a lien upon land within a certain state, he may institute proceedings against nonresidents to foreclose such lien or to remove a cloud from his title to the land, and may call them in by personal service outside the jurisdiction of the court, or by publication, if this method be sanctioned by the local law.' As said in Boswell's Lessee v. Otis, 9 How. 348 (13 L. Ed., 164):

" 'A bill for the specific execution of a contract to convey real estate is not strictly a proceeding *in rem,* in ordinary cases; but *where such a procedure is authorized by statute, on publication without personal service of process,* it is, substantially, *of that character.'*

"In Parker v. Overman (18 How. 137, 140, 15 L. Ed. 318), a proceeding under a statutory provision for service by publication, characterized by the court as 'to quiet the title' and as 'in substance a bill of peace,' was likened to a proceeding *in rem.* Both the Boswell and Parker cases are quoted from in Arndt v. Griggs, 134 U. S. 316, 323 et seq., 10 Sup. Ct. 557, 33 L. Ed. 918, where the statutes of several states are discussed in connection with the decision that the state has power to provide for quieting title to lands within its limits, and to acquire jurisdiction by constructive service against nonresidents.

"The *in rem* nature of a decree rendered under the Ohio practice is further indicated by G. C. Ohio, § 11590, declaring that:

" 'When the party against whom a judgment for a

conveyance, release, or acquittance is rendered, does not comply therewith by the time appointed, such judgment shall have the same operation and effect, and be as available as if the conveyance, release, or acquittance had been executed conformably thereto.'

"The decree of the court is thus made a muniment of title, as distinguished from a decree merely operating upon the person of a defendant, when the property is in another jurisdiction."

Now it has been held that an action to quiet title is distinctly a chancery case. *Clark* v. *Hubbard,* 8 Ohio, 382, 385; *W. C. McBride, Inc.,* v. *Murphy,* 111 Ohio St., 443, 446, 447, 145 N. E., 855; *Lust* v. *Farmers' Bank & Savings Co.,* 114 Ohio St., 312, 318, 151 N. E., 189.

There are other actions *in rem* which are the subjects of chancery practice. An action in partition is an action *in rem. Lessee of Glover's Heirs* v. *Ruffin,* 6 Ohio, 255; *Lessee of Abigail Pillsbury* v. *Dugan's Administrator,* 9 Ohio, 118, 34 Am. Dec., 427. It is also a chancery case. *Wagner* v. *Armstrong,* 93 Ohio St., 443, 113 N. E., 397.

An action to foreclose a mortgage is an action *in rem. Wood & Pond* v. *Stanberry,* 21 Ohio St., 142, 149: "But the only purpose of the action described in the affidavit for publication and authorized by this section was 'for the sale of real property under a mortgage,' a proceeding strictly *in rem."* It is also a case in chancery. *Fleming* v. *Kerkendall,* 31 Ohio St., 568, 571; *Hummer* v. *Parsons,* 111 Ohio St., 595, 146 N. E., 62; *Union Trust Co.* v. *Lessovitz,* 122 Ohio St., 406, 414, 171 N. E., 849.

An action to foreclose a mechanic's lien is a proceeding *in rem. Schuholz* v. *Walker,* 111 Ohio St., 308, 311, 145 N. E., 537. It is also a chancery case. *Hummer* v. *Parsons, supra; Union Trust Co.* v. *Lessovitz, supra.*

It would seem clear, therefore, from what has been said, that the characterization of an *in rem* proceeding

is in no way determinative of the question of whether or not the action is one in chancery.

It has also been urged upon us that the proceeding under the Registration of Land Titles Act is purely statutory, and hence cannot constitute a chancery case. This position is also wholly untenable, for it needs no argument or citation of authority to see that the Legislature cannot divest a chancery case of its character by incorporating provisions for effecting such procedure in the statute any more than it can make a chancery case by decreeing it to be such. *Thompson* v. *Redington,* 92 Ohio St., 101, 110 N. E., 652, Ann. Cas., 1918A, 1161; *Wagner* v. *Armstrong (Walker* v. *Burtscher,* and *James, Gdn.,* v. *Vulgamore), supra.*

What a chancery case is has been stated more than once by our Supreme Court.

"A chancery case is one in which, according to the usages and practices in courts of chancery prior to and at the time of the adoption of the Code of Civil Procedure, remedies were awarded in accordance with the principles of equity and not in accordance with rules of law. And the proper definition of the term in our new Constitution cannot be regarded as affected by the provisions of statutes relating to appeals nor by the introduction bodily of equitable remedies into our statutes." *In Re Estate of Gurnea,* 111 Ohio St., 715, 719, 146 N. E., 308, quoted from *Wagner* v. *Armstrong,* 93 Ohio St., 443, 113 N. E., 397.

Further quoting from *Wagner* v. *Armstrong, supra,* at page 456 of 93 Ohio State, 113 N. E., 400:

"It would not do, however, to lay down the hard-and-fast rule that only such chancery cases as were known to *that* period of our legal history could have been intended by the constitution makers as being the cases subject to appeal. The changing condition of the times, development along new lines, the springing up of new problems, progress in many of the avenues

of life—these things beget new rights and obligations that call for new equitable remedies.

"Equity is not only elastic as to its remedies but it is progressive.

"Its principles are indeed immutable, founded as they are on exact justice and equality before the law; but equitable remedies are constantly subject to enlargement.

"These considerations make it manifest, therefore, that an all-embracing and satisfactory definition of a chancery case would be most difficult to obtain, and if obtainable, might well promote injustice rather than justice."

No such proceeding as an action to register a land title, as such, was known as a chancery case, as hereinbefore defined, but it is not the name given the proceeding by the Legislature, or incidental features of the proceeding, that determine its character, but rather the essential characteristics of the case as developed from the pleadings.

Whether or not a case is a chancery case is to be determined from the pleadings. *Loomis Coal & Supply Co.* v. *Garchev,* 123 Ohio St., 316, 317, 175 N. E., 456; *Union Trust Co.* v. *Lessovitz, supra,* at page 414 of 122 Ohio State, 171 N. E., 849; *Wall* v. *Dayton Federation Co.,* 121 Ohio St., 334, 168 N. E., 847.

The petition contains a caption listing a party "plaintiff," by name, and some fifteen persons and corporations as defendants. It commences with the following statement: "Now comes the plaintiff Louis Levenson and makes application to have his title to and all other estates and interests in and liens and charges upon the bodies or parcels of land hereinafter described, settled, determined and registered as provided by law * * *."

The petition states the marital status of plaintiff and then gives a description of the first lot, the buildings thereon, the estate in the property claimed by the

applicant, his source of title, the use made of the property, and the presence of tenants thereon under lease. Then follows a list of all those claiming any lien, charge, or incumbrance of any nature, giving the nature, amount, date, maturity, record, the names of the holders and their addresses.

The next statement contains a similar list of those who have filed suits involving the property, and finally a list of any persons claiming or alleging any interest whatsoever in the property which may constitute a cloud upon the title.

Then follows a statement of the names and addresses of the owners of adjoining property, and any political subdivisions of the state claiming an interest in the property, or lien thereon.

It is stated that the applicant asks for the fixing of no street boundaries, and that none of the parties named as having an interest in the property or alleging a claim against it are under any disability.

The petition then contains similar allegations as to a second lot, and concludes with a statement that the applicant has made diligent inquiry and research, consisting largely of "public records," to ascertain the residences and addresses of each and every person mentioned in the application, and that those omitted he has been unable to obtain.

Then follows the following prayer: "Wherefore, plaintiff prays that all persons mentioned or referred to herein, whether by name or other designation, together with all other persons whomsoever who may be in any way interested in the foregoing, may be made and treated as defendants hereto and properly brought before the court; that the title of the applicant may be settled and determined and all clouds removed therefrom, and that such title be ordered registered as set out in the petition; and that all lesser or other estates, interests in and all liens, charges and incumbrances upon said lands or any part thereof, be settled

and determined by the court, and ordered to be registered; and that plaintiff be granted such other and further relief as may be just and equitable or to which he may be entitled at law or in equity.''

No praecipe for summons is filed, but after reference to an examiner and his favorable report upon the status of the applicant's title, the court orders publication of notices, as provided by the statute, and the sending out of notices to those whose names and addresses are listed. And returns are made by the sheriff and clerk of courts, stating compliance with such order.

A joint answer was filed in the case by Annette Wolfson Abrams and Morris Wolfson, stating that they claim title to the land described in the petition; that the plaintiff is only possessed of a life estate in said property by virtue of a deed from a life tenant holding her estate from a testator from whom they claim a fee in the property by virtue of a will whose terms are alleged in some detail.

They conclude their answer with the statement that ''these answering defendants claim therefore that they are the owners of two-thirds of said one-half interest of said property in fee simple, and that, therefore, said petitioner has no right to have said title registered in his name,'' following with a prayer to that effect.

A reply was filed by the plaintiff in which it was alleged that by the will in question the life tenant was given full and complete power to dispose of the life estate and sell the same, and that he therefore holds a good title from her.

While the statutes under which these pleadings are drawn provide for measures in addition to those afforded by an ordinary decree quieting title, aside from such considerations, which we do not deem material, the action, as we have stated, is essentially an action to quiet title, and the petition constitutes in the in-

stant case a statement that, because he fears *(quia limet)* that a claim will be made against his title, the plaintiff asks that his interest therein may be secured against the same.

The answer constitutes an assertion of the claim apprehended; the decree a decision upon the merits.

Thus viewing the matter, it is our conclusion that the instant proceeding under the Registration of Land Titles Act, while included in the statute law of the state, is essentially equitable in character, and a chancery case.

It is our further conclusion that upon an appeal such portion of the proceeding as is entirely equitable in character may be determined, and the case then be remanded to the court of common pleas for further proceedings under the Registration of Land Titles Act. Precedent for such procedure is *Loomis Coal & Supply Co.* v. *Garchev, supra,* from which we quote, at pages 320 and 321 of 123 Ohio State, 175 N. E., 456: "The Court of Appeals had jurisdiction upon appeal to hear and determine the question of the existence of such nuisance and the question of issuance of injunction. Since it exercised jurisdiction in the injunction branch of the case only, and remanded the issue as to damages to the Court of Common Pleas for determination, the Court of Appeals clearly did not err in overruling the motion to dismiss the appeal."

The motion to dismiss the appeal is overruled.

*Motion overruled.*

HAMILTON and CUSHING, JJ., concur.