## COOK & OWSLEY *v.* WALTERS.

Where it appeared from the record of a cause, "that defendant filed an affidavit and motion to set aside the default heretofore granted, which motion coming on to be heard, the court overruled the same, and refused to set aside said default, and permit said defendant to answer, to which ruling the defendants at the time, excepted;" and where it was contended in the appellate court, that no judgment by default was entered against the defendant, as contemplated by section 1824 of the Code; *Held,* That it appeared sufficiently from the record, that the defendant was in default.

Under section 1831 of the Code, a defendant in default, for want of an answer, in a case where the damages are assessed either by the court or a jury, has no right to introduce evidence, for the purpose of reducing the damages, nor to address the jury, and comment on the evidence, nor to ask instructions.

Where a defendant in an action, who was in default for want of an answer, on the assessment of damages by a jury, asked leave to introduce evidence, for the purpose of reducing the amount of damages shown by the plaintiff—claimed the privilege of addressing the jury, and commenting on the evidence—and asked certain instructions—all of which, being objected to, were refused by the court, on the ground that the defendant had no right to do anything more than cross-examine the plaintiff's witnesses; *Held,* That the decision of the court was correct.

Section 1781 of the Code, which provides that after a cause is submitted to a jury, they must be kept together, without drink, except water, and without food, except when otherwise directed by the court, as to the rights of parties, is directory in its character, and has reference more particularly to keeping them together *until* they have agreed, and to what shall be provided for them during their deliberations.

If a jury separate *after* agreement, without the consent of the court, it may amount to misconduct on their part, for which they may be liable; but such separation does not necessarily make the verdict void, or so taint it, as to prevent its reception by the court.

Where the court, soon after the jury retired to consider of their verdict, adjourned for dinner, and before the court convened again, the jury agreed upon their verdict, sealed the same up, and separated, without leave of the court, and without an agreement of the parties, that they might so separate; and where the jury having been called into the box, and being inquired of by the court, if they had agreed upon their verdict, responded that they had, and passed the same to the clerk, sealed up in an envelope, to the reception of which verdict the defendant objected, but the objection was overruled; *Held,* That the verdict was properly received.

*Appeal from the Marion District Court.*

THE plaintiffs brought this action to recover damages, sus-

Cook & Owsley v. Walters.

tained by the failure of defendant to furnish a quantity of corn, and perform other parts of a certain contract in writing, which is set out in the pleadings. Judgment was rendered in their favor.' Defendant appeals, and the material facts of the case will sufficiently appear from the opinion of the court.

*W. H. & J. A. Seevers* and *J. E. Neal*, for the appellant.

*Knapp & Caldwell*, for the appellees.'

WRIGHT, C. J.—Various errors are assigned in this case, but they may be appropriately considered under two heads:

*First.* Did the court err in rejecting defendant's evidence, in refusing to permit his counsel to address the jury, and in refusing the instructions asked by him?

*Second.* Was there error in receiving the verdict of the jury, under the circumstances disclosed in the record?

These questions we shall proceed to dispose of as briefly as possible, in the order presented. The defendant failed to answer the plaintiff's petition, and when the cause went to the jury, was in default. He says, however, that no judgment by default was entered against him, as contemplated by section 1824 of the Code. But the record shows, " that defendant filed an affidavit and motion to set aside the default heretofore granted, which said motion coming on to be heard, · the court overruled the same, and refused to set aside said default, and permit said defendant to answer, to which ruling the defendant at the time excepted." We think this is sufficient to show, with reasonable certainty, that defendant was in default, as much so as if the record had said, in so many words, that judgment by default was entered against him. It does not stand upon his mere failure to answer, without any step taken as a consequence thereof by plaintiff, but it appears affirmatively, that he moved to set aside the default *heretofore granted ;* that this motion was overruled ; and that the court refused to set aside said default. A default had, therefore, been *granted,* and of course, by the order and di-

rection of the court, on the plaintiff's motion.  Being thus in default, what were his rights under the law?

By the Code, (§ 1831,) it is provided that, in cases of default, where the damages are assessed either by the court or jury, the defendant may appear at the time of the assessment, and cross-examine the plaintiff's witnesses, *but for no other purpose.*  This language is clear, and we think can·admit of but one construction.  In this case, the defendant asked leave to introduce evidence, for the purpose of reducing the amount of damages proven by plaintiff;  claimed the privilege of addressing the jury, and commenting on the evidence ; and finally asked certain instructions, all of which being objected to by plaintiffs, were refused by the court, upon the ground that defendant was in default, and had no right, to do more than cross-examine the plaintiffs' witnesses.  Now, we think it has been well said in argument, that if, under this statute, a defendant, when in default, may introduce evidence, address the jury, and ask instruction, then he loses comparatively nothing by his laches, and the words of the law would be meaningless.  If, when the Code says, that he may appear for a certain purpose, and for none other, he may be allowed all the privileges here claimed, then why not introduce evidence to sustain a distinctive defence?  why not let him in for all purposes ?  To permit him to appear for all purposes, and to the same extent, as if he had fully answered, would no more violate the letter or spirit of the law, than to allow him to do *one* thing, or take *one* step, which the law says he may *not* do or take.

The case of *Hutchinson* v. *Sangster*, June term, 1854, cannot be said to be in point.  In that case, the defendant did answer, but it was held bad on demurrer.  He, therefore, rested upon the sufficiency of his answer, and after the conclusion of the plaintiff's testimony, asked leave to address the jury, and for certain instructions.  It was held, in that case, that the leave should have been granted, and that he had a right to ask instructions, upon the ground that he did not fail to file his answer, nor withdraw his pleadings, and was not, therefore, in default within the meaning of the Code.  It

is said in that case, that " the judgment was rendered as the result of a *defective* answer, and not in *default of an answer*." Without committing ourselves to the correctness of the distinction there made, it is sufficient to say, that that case clearly recognizes the construction given by us to the Code, when there is, in fact, a judgment in default of an answer.

We next inquire, whether there was error in receiving the verdict of the jury, and rendering judgment thereon.    The bill of exceptions states, that soon after the jury retired to consider of their verdict, the court adjourned for dinner, and before the court convened again, the said jury agreed upon their verdict, sealed the same up, and separated, without leave of the court ; nor did the parties agree that said jury might so separate.    The jury having been called into the box, and being inquired of by the court, if they had agreed upon their verdict, responded that they had, and passed the same to the clerk, sealed up in an envelope, to the reception of which verdict the defendant objected, but the objection was overruled, and he excepted.    To sustain the objection, appellant's counsel have referred us to several sections of the Code, and particularly to §§ 1780–81.    By these sections, it is provided, that " at any time before a cause is submitted to the jury, they may be permitted to separate, under the proper instructions of the court ;" and that " after the cause is submitted, they must be kept together, without drink, except water, and without food, except when otherwise directed by the court."    And in § 1785, it is further provided, that " when, by consent, the jury have been permitted to seal their verdict and separate before it is rendered, such sealing is equivalent to a rendition and recording thereof in open court.    The jury shall not be polled, nor shall they be permitted to disagree thereto, unless such a course has been agreed upon between the parties."

From these sections, as well as upon general principles, it is claimed that the jury, *after* agreeing upon their verdict, had no right to separate, there being no agreement of the parties to that effect ; and that to receive their verdict under such circumstances, was error.    In this view, we cannot con-

cur.    It is doubtless true, that it would be more regular, and there would be less liability of prejudice to parties, if jurors should be required in all cases, to deliver their verdict before separation.    We think, that § 1781, however, is, as to the parties' rights, directory in its character, and has reference more particularly to keeping the jury together *until* they have agreed, and to what shall be provided for them during their deliberations.    If they separate *after* agreement, it may amount to misconduct on their parts, for which they may be liable; but such separation, would not necessarily make the verdict void, or so taint it, as to prevent its reception.    We say not necessarily.    There might be cases, where after the separation, the verdict had been changed—or where, during the recess, some of the jurors had been tampered with, and induced to re-assemble and make another and different verdict; and under such circumstances, their action would be clearly irregular and improper, and their finding should be at once set aside; but this would be a consequence, not of the separation, but of their improper conduct during and after their separation.    In this case, however, they were kept together until they had agreed; during their retirement, court adjourned; having agreed and carefully sealed their verdict, they separated; at the coming in of the court, all being present, thus sealed up, it was delivered by them to the clerk, and by them there acknowledged to be their verdict; and as such, it was opened and read in their presence.    There is not the least ground for an intimation, that the verdict had been changed; that they had been tampered with; nor that the verdict was different from what it would have been had the jury continued together.    The objection would have more weight, if the separation had taken place before agreement. But even then, we do not believe that fact alone would render it bad.    Where the separation is *after* the agreement, however, we have no hesitation in holding that it may be received; and if not otherwise attacked, will be good.    See upon this subject generally, *Ragland* v. *Wells*, 6 Leigh, 1; *Blake* v. *Blossom*, 3 Shep. 394; *Harrison* v. *Rowas*, 4 Wash.

C. C. 32; *Ex parte Hill,* 3 Cow. 355; *Erwin* v. *Saunders,* 1 Ib. 243; *Smith* v. *Thompson,* Ib. 221; *Oram* v. *Bishop,* 7 Halst. 153; *Horton* v. *Horton,* 2 Cow. 589; *Wright* v. *Burchfield,* 3 Ham. 352.

Judgment affirmed.