Cleveland, Cincinnati, Chicago and St. Louis Railway Co.

*v.*

James Monaghan, Admr.

*Filed at Mt. Vernon March 28, 1892.*

1. Removal of a cause—*from State to United States court—parties must be citizens of different States.* To entitle the defendant in a suit brought in a State court, to remove the cause from the State court to the United States court for trial, under the act of March 3, 1887, the controversy must be between *citizens* of different States. A petition for such removal is defective if it merely avers that the plaintiff was and is a *resident* of Illinois. It should aver that he was and is a *citizen* of Illinois.

2. Same—*bond must be filed.* To entitle a party to remove a cause from the State court to the Circuit Court of the United States, he is required to make and file with his petition a bond, with good and sufficient security.

3. Same—*affidavit of surety on bond—whether sufficient.* An affidavit of a surety in a bond given on application to transfer a cause from the State to the Federal court, stated that "he is worth the sum of $2000 over and above all of his exemptions of every kind, and over and above all of his liabilities:" *Held,* insufficient, as it fails to state that the surety has any property subject to execution in the district, in the State, or that he is a resident of the State.

4. Jury—*separation before return of verdict.* A jury in a civil action, about ten o'clock P. M., agreed upon and signed their verdict, and, without any stipulation or order of court, put the verdict in an unsealed envelope and gave it to the bailiff in charge, and separated. On the next forenoon the bailiff returned the verdict to the clerk of the court. Defendant objected to it because not sealed up, whereupon the court, at plaintiff's request, ordered the jury to be polled, when it appeared that one of the jurors had gone home by leave of the court. The jurors were ordered to be present on the next day, when the jury were again called, and the court directed them to retire and consider their verdict. They returned the same verdict as before, and on being polled adhered to the same: *Held,* that the allowing of the juror to go home before the verdict was received was a grave irregularity, but in the absence of proof that any of the jurors had been tampered with, it was not sufficient ground for a new trial.

5. Any irregularity or misconduct in the jurors themselves will not be a sufficient ground for setting aside a verdict, when the court is satisfied that the party has not or could not have sustained any injury from it. So a separation of the jury after their verdict is made up is no cause for a new trial, but if there is probable ground for believing that there has been any abuse to the injury of the defeated party, the verdict will be set aside.

6. Evidence—*photographic views—no proof of correctness—properly refused.* In an action against a railway company to recover damages for negligence resulting in the death of the plaintiff's intestate at a highway crossing, in which the leaving of cars standing on the side-tracks so as to obstruct the view of approaching trains was claimed as a ground of negligence, the defendant offered in evidence photographic views of the locality where the accident happened, taken by an amateur artist some two months thereafter. The party who took such views had never visited the scene of the occurrence before, and there was no proof that they correctly represented things as they were when the accident happened: *Held,* no error in the court to refuse them in evidence.

7. Same—*verification of photographs—discretion of court.* The preliminary questions of fact as to the verification of pictures taken by a photographer, to admit them in evidence, are addressed to the discretion of the trial court, and his decision thereon is not subject to exception.

8. Negligence—*failure to ring bell or sound whistle—instructions.* In an action against a railway company to recover damages for a personal injury resulting in the death of the plaintiff's intestate, an instruction held that the failure of the defendant to ring a bell or sound a whistle on approaching a highway crossing was such negligence as to make the defendant liable, without requiring the jury to find that such negligence contributed to the happening of the accident. In another instruction, in the same series, the jury were required to find, from the evidence, that "the causes of said collision were the obstructions upon said side-track, the rate of speed of said train, and the failure to ring a bell or sound a whistle," etc.: *Held,* that if the first named instruction was erroneous it could have done the defendant no harm, in view of the explanation and qualification in the other one.

9. Instructions—*to be considered as a series.* Where the court gives a series of instructions on each side of a case, they should be regarded as one charge, and should be considered together. Thus, an omission or error in one may be supplied or cured by others given.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. W. H. Snyder, Judge, presiding.

Mr. John T. Dye, and Mr. George F. McNulty, for the appellant:

It was error to instruct the jury that plaintiff could recover if he was exercising ordinary care and the defendant failed to ring the bell or sound the whistle, regardless of whether such omission caused the injury. *Railway Co.* v. *Manly,* 58 Ill. 300; *Railroad Co.* v. *Wellhoener,* 72 id. 60; *Railroad Co.* v. *Blackman,* 63 id. 117; *Railroad Co.* v. *Van Patten,* 64 id. 510; *Railway Co.* v. *Linn,* 67 id. 109; *Railroad Co.* v. *Lee,* 68 id. 576; *Railroad Co.* v. *Benton,* 69 id. 174; *Railway Co.* v. *Jones,* 76 id. 310; *Railway Co.* v. *Reed,* 17 Bradw. 416; *Railroad Co.* v. *Dvorak,* 7 id. 555.

The court erred in receiving the verdict of the jury after they had ceased to consider the case, and one of them had been excused by the court, and all had separated. *Bond* v. *Wood,* 69 Ill. 283; *White* v. *Martin,* 2 Scam. 69; *Offit* v. *Nick,* Walker, 99; *Howle* v. *Dunn,* 1 Leigh, 455.

The court erred in not admitting in evidence photographs showing the location of the tracks, cars, and views of approaching trains. Photographs are equally admissible with plats. *Blair* v. *Pelham,* 118 Mass. 421; *Cozzens* v. *Higgins,* 33 How. Pr. 439; *Church* v. *Milwaukee,* 31 Wis. 512; *Marcy* v. *Barnes,* 16 Gray, 161; *Dyson* v. *Railroad Co.* 57 Conn. 9; *Locke* v. *Railroad Co.* 46 Iowa, 109; *Archer* v. *Railroad Co.* 106 N. Y. 589; *Cowley* v. *People,* 83 id. 478; *Reddin* v. *Gates,* 52 Iowa, 210; *Barker* v. *Perry,* 67 id. 146; *Alberti* v. *Railroad Co.* 118 N. Y. 77; *People* v. *Buddensick,* 103 id. 500.

The court should have allowed the removal of this cause to the United States Circuit Court. The petition need not be sworn to. Dillon Rev. (5th ed.) sec. 128; *Removal cases,* 100 U. S. 457; *Brown* v. *Murray Nels. Co.* 43 Fed. Rep. 614; *Meyers* v. *Murray Nels. Co.* 43 id. 695.

The surety did not have to verify to the bond. Speer on Removals, "Bond."

Mr. John G. Irwin, for the appellee:

Photos, as well as plats, to be admissible in evidence, must be verified by preliminary proof that they are true representations of the places and objects of which inquiry is being made, and "whether sufficiently verified or not is a preliminary question of fact, to be determined by the judge presiding at the trial," and that "his decision thereon is not subject to exception." *Blair* v. *Pelham,* 118 Mass. 420; *Commonwealth* v. *Coe,* 115 id. 481; *Walker* v. *Custis,* 116 id. 98; *Locke* v. *Railway Co.* 46 Iowa, 112; *Hollenbeck* v. *Rowley,* 8 Allen, 478.

The petition and bond, on application for a removal of the cause, were fatally defective, and no injury or bad result is shown to result from the irregularity of the jury, and hence it affords no ground of reversal. *Consolidated Coal Co.* v. *Maehl,* 130 Ill. 553; *Griffin* v. *Larned,* 111 id. 436.

In regard to the objection made to instructions, we submit that, taking all the instructions together, the law of the case

was fully and fairly stated to the jury.   On the part of the defendant enough were asked to make a book.   The criticism of our third instruction is not placed upon tenable grounds, as it is taken from, and supported by a ruling made in, *Railroad Co.* v. *Voelker*, 129 Ill. 555.   Taking the instructions as a whole, there is no cause of complaint on that account.

Mr. Chief Justice Magruder delivered the opinion of the Court:

This is an action on the case brought by the appellee, as administrator of Joseph Monaghan, deceased, against the appellant company, to recover damages for the death of the deceased, caused by a collision on September 3, 1890, between a freight train on appellant's road and a wagon which deceased was driving, at a point where a public highway crossed said road.   Verdict and judgment in the trial court were in favor of the plaintiff, and the judgment has been affirmed by the Appellate Court.

The declaration avers among other things, that, at the time and place of the accident, freight cars were standing upon the side track and extending into the highway north and south of it, so as to prevent persons approaching the crossing from seeing a train running upon the main track; that the train, which collided with the wagon, was moving at the unusual speed of thirty five miles an hour; that no bell was rung or whistle sounded, or kept ringing or sounding for eighty rods from the crossing; that, by reason of such speed, and obstructions, and failure to ring a bell or sound a whistle, the locomotive and train were driven against the deceased while upon the crossing.

The third instruction given for the plaintiff is complained of as being erroneous upon the alleged ground, that it held the mere failure to ring a bell or sound a whistle to be such negligence as made the defendant liable, without at the same time requiring the jury to find that the negligence in question

contributed to the happening of the accident. It is said that, upon the authority of *T. W. & W. R. W. Co.* v. *Jones*, 76 Ill. 311, and other cases, the omission of the duty thus imposed by the statute will not render a railroad company liable, unless it is made to appear that the ringing of the bell, or sounding of the whistle, might have prevented the injury. If the instruction was erroneous in the respect thus indicated, it could not have done the defendant any harm in view of its explanation and qualification by other instructions which were given. The trial court gave six instructions for the plaintiff and twenty five for the defendant. These instructions should be regarded as one charge, and should be considered together. Construing them as a whole, the jury could not have been led to conclude, that the defendant was liable for any negligence, which did not cause, or contribute to, the accident. For example, the first instruction given for the plaintiff required the jury to find from the evidence, that "the causes of said collision were the obstructions upon said side track, the rate of speed of said train, and the failure to ring a bell or sound a whistle, or keep a bell ringing or whistle sounding as aforesaid."

Alleged misconduct of the jury is assigned as error. The cause was submitted to the jury late in the afternoon of Tuesday, November 18, 1890. They reached a conclusion at 10 o'clock upon the night of that day, finding the defendant guilty, and assessing plaintiff's damages at $1000.00. They reduced their verdict to writing, and it was signed by the foreman. They also reduced to writing their answers to written questions by the defendant, upon which they were required to make special findings. The general verdict, signed by the foreman, and the special findings signed by the jurymen, were handed by the jury to the bailiff, the court not being then in session. The verdict as thus handed to the bailiff in charge of the jury was unsealed. The jury were then allowed to separate, and they went to their respective "homes

-and lodgings." At ten o'clock on the next morning, being Wednesday, November 19, the bailiff returned the verdict and answers to the clerk of the court. The defendant's attorney ·objected to the reception of the verdict because it was unsealed. Thereupon the court, at the request of the plaintiff's attorney, ·ordered the jury called in order that they might be polled, to which defendant excepted. When the jury were called, it appeared that one of them, William Kenneman, was absent, and that he had been excused for the day by the judge of the court, in order that he might go home to attend the wedding of his ·son. The jury were then allowed to separate and were directed to report upon the following day, to which defendant objected and excepted. At 10 o'clock on the next morning, it being Thursday, November 20, the jury were again called and were all present, including the said Kenneman, and again retired under the instructions of the court to consider their verdict. They then came back into court, and returned the same verdict and answers as had been previously delivered to the bailiff, thereby affirming their former verdict. Their verdict and answers were received by the court and read, and the jury were polled by plaintiff's attorney, each juryman answering that the verdict so rendered was his verdict. The verdict was then entered and appears of record. These proceedings were all objected to by defendant, and exception was taken. It does not appear from the record, that there was any stipulation between counsel, permitting the jury, upon their first retirement, to return a sealed verdict, in case they should agree upon one while the court was not in session.

There is here disclosed a very grave irregularity. But, as it does not appear that the defendant below suffered any injury from such irregularity, we cannot say that the trial court erred in refusing to grant a new trial.

It is now a general practice to allow the jurors to separate in a civil case after agreeing upon their verdict and sealing it up. If it had been suggested, before they retired, that they should

be allowed to do so in this case, the suggestion would doubtless have been accepted by both counsel, and directions would have been given accordingly by the court. Although the verdict in the present case was not sealed, yet it was agreed upon and reduced to writing before the separation took place, and the same verdict was afterwards affirmed by the jury and re-adopted by them after they were polled. There is no evidence, that any of the jurymen had been tampered with, or had conversed about the case with any outside party. No abuse was practiced during the separation. If there was anything in the record showing probable cause to believe that there was such abuse, we would reverse the cause. Under the circumstances, however, the weight of authority is against the setting aside of the verdict.

"Any irregularity or misconduct in the jurors themselves, will not be a sufficient ground for setting aside a verdict, * * * when the court is satisfied that the party has not, or could not have, sustained any injury from it." (*The People* v. *Ransom,* 7 Wend. 417; *Evans* v. *Foss,* 49 N. H. 490). A separation of the jury, after they have agreed upon a verdict, is no cause for a new trial, although, if there is probable ground for believing that there has been any abuse to the injury of the defeated party, the verdict will be set aside. (*Horton* v. *Horton,* 2 Cow. 589; *Smith* v. *Thompson,* 1 id. 221; *Cook* v. *Walters,* 4 Iowa, 72; *Armleder* v. *Lieberman,* 33 Ohio St. 77; *Morrow* v. *Comrs. of Saline Co.* 21 Kan. 484; *Brown* v. *McConnell,* 1 Bibb, (Ky.) 265; *Sartor* v. *McJunkin,* 8 Rich. L. 451; *Leas* v. *Cool,* 68 Ind. 166; *Crocker* v. *Hoffman,* 48 id. 207; *Haynes* v. *Thomas,* 7 id. 38.) "It is no ground of new trial that the jury separated over night, after agreement; or, in a civil case, dispersed over night without permission." (Hilliard on New Trials,—2 ed.—page 233.) "Where the jury, before separating have agreed upon their verdict, the reason for the rule, which requires them to be guarded with jealousy, ceases, and with it the rule itself. Their conduct

can then no longer expose them to influences likely to affect their finding, for that has already been made." (Graham & Waterman on New Trials, vol. 2, page 547, and cases cited.) In *Wright* v. *Burchfield,* 3 Ohio Rep. 3, where the jury, after agreeing upon their verdict, the court having adjourned, wrote their verdict upon a loose piece of paper, and then separated without leave of the court, but, when the court met, came in, and, being called as in other cases, rendered their verdict from the box, it was held there was no sufficient reason to set aside the verdict, and that "the misbehavior of a juror in a civil case, which would render it necessary to disturb the verdict, should be of such character as to evidence bad intention." There is no pretense of any bad intention in the case at bar.

It is quite clear from the authorities above referred to, that there would have been no ground for a new trial on account of the separation of the jury after their agreement on Tuesday night, if they had all been present in court on Wednesday morning when called, and had then returned their verdict from the box. So far as the adjournment over from Wednesday morning to Thursday morning was concerned, that was the act of the court and not of the jury. The juryman then absent had been excused for the day by the court, and it was *his* absence that rendered the adjournment necessary. While we cannot approve of the course of the trial judge in permitting a juror to thus absent himself after the verdict was agreed upon and before it was returned into court and entered, yet we are not inclined to hold that there was such an abuse of the discretion which is necessarily entrusted to the trial court in circumstances like those here described, as to warrant us in setting aside the verdict. In *Bond* v. *Wood,* 69 Ill. 282, where one of the jurors went out of the State and was absent ten days after the verdict had been agreed upon and sealed but before it was returned into court, it appeared that the court had actually discharged the juror, and for this error there was a reversal. Here, however, there was no discharge of the absent

juror, but a mere leave of absence for one day. (*Griffin* v. *Larned*, 111 Ill. 432; *Consolidated Coal Co.* v. *Maehl*, 130 id. 551.)

It is also urged as a ground of reversal, that the trial court refused to admit in evidence certain photographic views of the locality where the accident occurred, and its surroundings. There are authorities which hold, that photographs may be received in evidence, under certain circumstances, to assist the jury in understanding the case, provided they are verified by proof as being true representations of the subject. In the present case, each photograph was taken two months after the accident occurred by a merchant, who was a mere amateur photographer, and had never visited the scene of the occurrence before he took the photographs. One of the material questions was, whether or not the view of the train which killed the deceased was obstructed by box cars then standing on a sidetrack, and by other objects near the crossing. The pictures taken were not of the situation as it existed on the day of the injury, but as it was two months after the injury. At the latter date other box-cars had been placed upon the track, and the leaves had fallen from the trees. The party taking the pictures did not know, whether the objects arranged for his inspection were of the same size, dimensions, height, etc., as those which were there two months before, or whether they occupied the same position. Under these circumstances we cannot say, that the court below acted arbitrarily in refusing to receive the photographs in evidence. The preliminary question of fact as to the verification of the pictures is addressed to the discretion of the trial judge, and his decision thereon is not subject to exception. (*Blair* v. *Pelham*, 118 Mass. 420; *Hollenback* v. *Riley*, 8 Allen, 473; *Randall* v. *Chase*, 133 Mass. 210; *Locke* v. *The S. C. & P. R. Co.* 46 Iowa, 109; *Ruloff* v. *People*, 45 N. Y. 213.)

The exclusion of the photographs could not have done the defendant any injury, as the court permitted it to introduce a

colored plat or diagram, which showed the situation of the main
and side tracks, of the highway and crossing, of the ditches
on the sides of the highway, and of the buildings and other
objects at the place where the accident happened.

The defendant, before pleading, filed a petition for the re-
moval of the case to the Circuit Court of the United States.
The refusal of the trial court to grant the prayer of the peti-
tion is assigned as error.   The Act of Congress upon this
subject provides, that the petitioner "may make and file a
petition," etc., and requires that he "shall make and file there-
with a bond with good and sufficient surety," etc.   (Dillon's
Removal of causes—5 ed.—sec. 36, pge 42).   The plaintiff
below filed written objections to the removal, the first of which
was that the bond was not good and sufficient, there being no
evidence as to the responsibility of the makers; and the third
objection was, that the bond filed was not the bond of the
defendant.   Upon hearing and argument, the court held the
objections to be good, and we think that its ruling was correct
upon the authority of the case of *Weed Sewing Machine Co.*
v. *Smith*, 71 Ill. 204.

After the hearing and argument upon the written objections,
one of defendant's attorneys, Mr. McNulty, who signed the
bond as surety, asked leave to file an affidavit as to his re-
sponsibility.   Leave was refused, but the affidavit is in the
record and was insufficient if it had been received.   It simply
sets forth, that "he is worth the sum of over $2000.00 over
and above all his exemptions of every kind and over and above
all his liabilities."   It does not state, that he has any prop-
erty subject to execution in the district, or State, or that he
is a resident of the State.

Aside, however, from the question of the sufficiency of the
bond, we do not think that the petition was such as to justify
a removal of the cause.   The Supreme Court of the United
States has said, "that a State Court is not bound to surrender
its jurisdiction upon a petition for removal until, at least, a

petition is filed, which, upon its face, shows the right of the petitioner to the transfer." (*Amory* v. *Amory*, 95 U. S. 186.) Jurisdiction is given to the Circuit Courts of the United States in suits of a civil nature "in which there shall be a controversy between citizens of different States;" and the Act of Congress of March 3, 1887, in regard to the removal of causes, under which the petition in this case is framed, provides for removal when "there shall be a controversy which is wholly between citizens of different States." (Dillon's Rem. of Causes —5 ed.—page 41, secs. 35, 36). Here the averment of the petition is, "that the controversy in the said suit is wholly between citizens of different States, towit: between your said petitioner, who avers that he (it) was, at the time of bringing of the said suit, and still is, a citizen of the States of Ohio and Indiana; and the said plaintiff, who, as your petitioner avers, was then, and still is, a *resident* of the State of Illinois." The petition is defective in averring that the plaintiff was and is a *resident* of Illinois, and in not averring that he was and is, a *citizen* of Illinois. In *Shelton* v. *Tiffin*, 6 How. 162, the Supreme Court of the United States said: "In the declaration, or bill, an allegation of citizenship of the parties must be made, as it has been held that an averment of residence is insufficient." The same Court has also said, that "'Citizenship' and 'residence' are not synonymous terms." (*Parker* v. *Overman*, 18 How. 141; *Brown* v. *Keene*, 8 Pet. 115; *Brock* v. *Doyle*, 18 Florida, 172; *Kelly* v. *Houghton*, 23 Fed. Rep. 417; Dillon's Rem. of Causes—5 ed.—pge 109, sec. 98, and cases cited in notes.)

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*