JAMES F. WALKER, Appellee, v. DAILEY, OTTMAN & MINTEER, Appellants.

| 87  | 375 |
| 114 | 700 |

1. **Evidence**: ERROR WITHOUT PREJUDICE.  Errors in rulings upon the admission of evidence are no ground for reversal, when the appellant has not been prejudiced thereby.

2. **Instructions to Jury**: WHEN PROPERLY REFUSED.  Instructions asked may properly be refused when the substance of them, so far as correct, is embodied in the charge given by the court.

3. **New Trial**: MISCONDUCT OF JURY: INSUFFICIENT SHOWING.  An affidavit to the effect that two of the jurors, at a recess of the court, during the progress of the trial, discussed the merits of the case in the presence of other persons, but not showing what was said, so that the court might judge for itself whether it related to the merits of the case, and whether or not it was prejudicial, *held*, not to constitute ground for a new trial.

4. ———: ———.  The fact that one juror, in a joking manner, offered to bet another that the defendants were beaten, without any intention of expressing an opinion or making a bet; *held*, not to be ground for a new trial.

5. **Verdict**: SEALING WITHOUT CONSENT OF PARTIES.  After the jury had retired to deliberate on their verdict, night coming on, the judge, without notice to either party or counsel, instructed the bailiff that, if an agreement was reached before morning, he should have the verdict sealed, and delivered on the convening of court on the following day.  Accordingly, the verdict was sealed, and the jurors separated, and, on the convening of court the next morning, they assembled in the jury box, the verdict was read in open court, and ordered recorded, neither party nor counsel being present in court at the time. *Held*, that, in the absence of any showing of prejudice, the verdict should stand.

*Appeal from Hardin District Court.* — HON. S. M. WEAVER, Judge.

SATURDAY, JANUARY 28, 1893.

THE plaintiff sues to recover of the defendants five hundred and twenty-two dollars and eighty-nine cents, a balance claimed to be due to him after deducting charges from the sale of a car of forty-eight hogs

shipped by him, in his own name, to the defendants as commission merchants, and sold by them. The defendants admit the receipt and sale of the hogs, and that the amount claimed was received from the sale, after deducting charges. They allege as defense that said amount was fully paid; that prior to said transaction the plaintiff held himself out as a member of a copartnership composed of himself, B. D. Robb, and W. H. Shultz, under the name of Walker, Robb & Co.; that previous to this transaction said firm made shipments of live stock to the defendants for sale on commission, sometimes in the name of Walker, Robb & Co., sometimes in the name of Walker, and sometimes in the name of Shultz; that the defendants made advances to Walker, Robb & Co. by cashing drafts drawn by them on the defendants, usually in the name of one of the members, which advances were to be paid back out of the proceeds of sales; that on October 17, 1889, the defendants were notified that Robb had gone out of the firm, and that the other members continued in business, and that they have no other notice of any change in said firm; that the net proceeds of all sales, including the forty-eight hogs, exceeded the advances one hundred and six dollars and sixty-nine cents, which amount they remitted to Walker & Shultz. Upon these allegations the defendants claim that the plaintiff is estopped from denying the partnership and their right to apply the proceeds of the forty-eight hogs on the partnership account. The case was tried to a jury, and a verdict and judgment for the plaintiff. The defendants appeal.—*Affirmed.*

*Huff & Ward*, for appellants.

*C. E. Albrook*, for appellee.

GIVEN, J.—I. The appellants' first complaint is of certain rulings of the court in admitting and rejecting

1. **EVIDENCE: error without prejudice.** evidence. These exceptions are somewhat numerous, and not of a character to require separate notice. We have examined the rulings with care, and find that in most instances the error, if any, was cured by subsequent statements of the witnesses. The plaintiff offered exhibit 1, being a statement from defendants concerning the sale of the forty-eight hogs. The defendants objected, on the ground that it had been altered. There is no evidence of any alteration. The defendants also objected to exhibit 3, being the plaintiff's notice to them to produce their books. The record shows the offer and objection, but fails to show any ruling on the objection, or that the offer was insisted upon, or the exhibit treated as in evidence after the objection was made. The inference warranted by the record is that the plaintiff submitted to the objection. We do not discover any prejudicial errors in admitting and rejecting evidence.

II. The appellants discuss the evidence at some length, and claim that the alleged copartnership of Walker, Robb & Co. is thereby conclu-

2. **INSTRUCTIONS to jury: when properly refused.** sively established, and, therefore, the court erred in not giving the five instructions asked. The question of copartnership was fairly and properly submitted to the jury, and, there being evidence to support their finding, we can not disturb the verdict as being unsupported by the evidence. The instructions refused are not based upon the assumption that a partnership was conclusively proved, but upon the claim that the plaintiff was bound by the acts of Shultz, within the scope of the partnership, if they were in fact partners, or if the plaintiff had so held out to the defendants, and they had dealt with him on the faith thereof. In so far as these five instructions state the law, they are embraced in substance and effect, in those given by the court.

III. The appellants complain of the seventh,

eighth, ninth and tenth paragraphs of the court's charge, upon the ground that "they were measurably based upon a state of facts as to which there was no evidence." In the seventh, the jury were told: "If, however, when the plaintiff paid such drafts (if he did pay them), or when defendants deducted the amount of such drafts from the proceeds of subsequent shipments, he objected, and submitted to such payment or deduction under protest, or then notified defendants that Shultz had no authority to bind him by such drafts, or if, when he so permitted defendants to deduct the amount of said drafts from the proceeds of subsequent sales (if he did in fact permit it), he did not know that said drafts were drawn by Shultz in his individual name, then he is not estopped, and may deny the authority of Shultz to bind him by the drafts in controversy, to the same extent as if the former draft had never been drawn or never paid." We think there was evidence relating to every proposition contained in this instruction. True, there was no evidence that the plaintiff in person, and with his own money, paid the drafts drawn by Shultz, but there was evidence that he consented that such drafts might be drawn for the firm. If he did so agree, or if he permitted the drafts to be charged to the firm, then in that sense he paid them. This part of the instruction is certainly favorable to the appellants.

There is evidence that the plaintiff objected to deducting Shultz's drafts from subsequent shipments. He says that he gave them to understand they had no right to do so when he was not willing. In paragraph nine the jury was instructed: "If you find from the evidence that plaintiff and Shultz did not put their money into a common fund or capital, for the purposes of their joint business, but that each purchased live stock with his own funds, or upon his individual checks, and then shipped and sold such live stock on their joint

or common account, each receiving a share of the
profits, and bearing a share of the losses, then such
combination or association would be a partnership for
the purpose of this case." There was evidence that
some kind of arrangement existed between the plaintiff,
Shultz, and Robb, and later between Shultz and the
plaintiff. The evidence was conflicting as to what it
was. The ninth instruction submits the question of
partnership between Walker & Shultz. The appel-
lants contend that there is no evidence that they had
any knowledge of such firm. They admit in their
answer that they had notice that Robb had withdrawn
before the shipment of the forty-eight hogs, and allege
that Walker and Shultz continued in the business as
partners. The court very properly submitted the
inquiry whether Walker and Shultz were partners.
There was evidence upon which to base each of these
instructions.

IV. The appellants urge that the verdict is con-
trary to the instructions and evidence. We have
already said that it has support in the evidence. The
appellants do not point out, nor we discover, wherein
the verdict is contrary to the instructions.

V. One ground of the appellants' motion for a
new trial was misconduct of the jury. One Buck made
an affidavit that at a recess of the court,
during the progress of the trial, two jurors,
whom he named, engaged in a conversa-
tion and discussion with other persons, in a certain
store, about the merits of the case, and that both
expressed their views freely about the case and the
weight of the evidence, in the presence of the people.
Such conduct on the part of the jurors is always to be
condemned; they should have no conversation what-
ever with any person concerning a case on trial before
them, and trial courts should so instruct them, and
properly punish any disregard of the instruction. The

3. NEW trial:
misconduct of
jury: in-uffi-
cient showing.

question with us is, however, whether the misconduct was prejudicial to the appellants. It does not appear that Mr. Buck knew what the merits of this case were. We are not informed of even the substance of what was said, and, in the absence of such a showing, can not say that the misconduct was prejudicial. In *Ridenour v. City of Clarinda*, 65 Iowa, 465, this court said: "If the case was discussed upon its merits, the facts should have been set out as distinguished from the conclusion of the affiant, so that the court could determine for itself, without accepting conclusions, whether or not the discussion tended to prejudice the defeated party." See, also, *Brant v. City of Lyons*, 60 Iowa, 175.

VI. Juror Lee made an affidavit that, after the defendants' evidence was introduced, James Pence, one of the jurors, "said to me that he would bet me money that the defendants were beaten in the said cause;" that he offered to bet one dollar. Pence makes an affidavit that he has no recollection of making such an offer, and does not believe that he did, but, if he did, it was in a trifling and joking way, and without any intention of expressing an opinion or making any bet. Here is a conflict in the evidence of Lee and Pence, and the lower court with the witnesses before it, must have found that Pence did not make the offer, or that it was in jest, and without prejudice to the appellants. We think there was no error in refusing a new trial on account of misconduct of the jury in these particulars.

VII. The appellants stated, as another ground for a new trial, "that the jury sealed their verdict, and separated without the order or leave of the court, and without the consent of the parties to the suit." The bill of exceptions shows as follows: "After the jury had retired to deliberate on their verdict, night coming on, the judge presiding at said term of court instructed the

bailiff (without notice to either party or counsel) that if there was an agreement reached before morning, to have the verdict sealed, and delivered on the convening of court on the following day; that in pursuance of the instructions so given, the verdict was sealed, and the jury separated, and on the convening of court, the jury having assembled in the jury box, the verdict was opened and read in open court, and ordered recorded; neither party nor counsel being in court at the time the verdict was so received and recorded." It will be observed that the verdict was sealed, and the jury permitted to separate, by order of the court, but without the consent of the parties. Under the provisions of the present Code, when a jury retire to deliberate, they are required to be kept together until they agree upon a verdict or are discharged by the court. Section 2791. The verdict must be in writing, and signed by a foreman, and when agreed the jury must be conducted into court, their names called, and the verdict rendered read by the clerk, and the jury asked if it is their verdict. Section 2803. When the verdict is announced, either party may require the jury to be polled. Section 2804. Section 2805 is as follows: "When by consent of the parties and the court, the jury have been permitted to seal their verdict, and separate before it is rendered, such sealing is equivalent to a rendition and recording thereof in open court, nor shall such jury be polled or permitted to disagree thereto, unless such a course has been agreed upon between the parties in open court and entered on the record." The appellant's contention is that it was an error for the court to permit the jury to seal their verdict and separate, without the consent of the parties, and that they were thereby deprived of the privilege of polling the jury. The Code of 1851 and the revision of 1860 contain provisions substantially the same as those cited above.

Section 1785 of the Code of 1851, is identical with section 3075 of the Revision, and section 2805 of the present Code, except that the former reads, "when by consent the jury have been permitted to seal their verdict and separate," etc.; while the two latter read, "when by consent of the parties and the court," etc. In *Cook v. Walters*, 4 Iowa, 73, during the adjournment of the court for dinner, the jury agreed upon their verdict, scaled the same, and separated, without leave of the court or consent of the parties. The jury being called, and asked if they had agreed, answered that they had, and passed the sealed verdict to the clerk, to which verdict the defendant objected, but the objection was overruled. This court said: "It is doubtless true that it would be more regular, and there would be less liability of prejudice to parties, if jurors should be required in all cases to deliver their verdict before separation. We think that section 1781, however, is, as to the parties' right, directory in its character, and has reference more particularly to keeping the jury together until they have agreed, and to what shall be provided for them during their deliberations. If they separate after agreement, it may amount to misconduct on their parts, for which they may be liable; but such separation would not necessarily make the verdict void, or so taint it as to prevent its reception. * * * The objection would have more weight if the separation had taken place before agreement. But even then we do not believe that fact alone would render it bad. Where the separation is after the agreement, however, we have no hesitation in holding that it may be received; and if not otherwise attacked, will be good."

In *Heiser v. Van Dyke*, 27 Iowa, 359, there was a jury trial lasting ten days, the jury retiring to deliberate about twelve o'clock M. In the evening of that day the judge told the officer in charge of the jury to

report to him if they agreed, and he would come and receive the verdict; if he was not at his chambers, that the verdict should be sealed and reported the next morning. The next morning the jurors were called, and responded that they had agreed upon their verdict. The verdict, then in the hands of the clerk, was read and they answered that it was their verdict. At the defendant's request the jury was polled, and each answered that it was his verdict. The verdict was agreed upon about 4 o'clock A. M., sealed and placed in the hands of the sworn bailiff, to be by him handed to the clerk, which he did. In passing upon the question this court held as follows: "In overruling this motion the court below did not err. The Code of 1851 (sections 1780–1786) is not unlike the provisions of Revision, sections 3062–3076. The case of *Cook v. Walters*, 4 Iowa, 72, was decided in 1856, under the Code of 1851, and clearly sustains this ruling. There the jury separated without the leave of the court or the consent of the parties. It was held that the separation did not necessarily make the verdict void, nor so taint it as to prevent its reception. Not being otherwise attacked (and the same is true in this case), it was held good, and see the many cases there cited. Also, *Miller v. Mabon*, 6 Iowa, 456; *Morrison v. Overton*, 20 Iowa, 465; *Hamilton v. Barton, Id.* 505." This decision was rendered under Revision, section 3075, which is identical with section 2805 of the present Code. As said in *Cook v. Walters, supra*, "there is not the least ground for an intimation that the verdict had been changed; that they had been tampered with; nor that the verdict was different from what it would have been had the jury continued together." That the appellants were not present at the time the jury was called, and the verdict rendered, was their own fault; it was during the regular session of the court, and had the appellants attended, as was their privilege,

they might have polled the jury if they desired, as was done in *Heiser v. Vandyke, supra.* The mere fact that the jury was permitted to seal its verdict and separate, by leave of the court, does not show any prejudice to the appellants. *Jessup v. Chicago & N. W. Railway Co.,* 82 Iowa, 243, cited by appellants, is not in conflict with the cases cited. The action of the court contemplated the polling of the jury at the time the verdict was to be returned. The jury, upon being polled, did not agree to the verdict as rendered, and this court held that the jury should have been sent out for further consideration of the case.

Our conclusion upon the whole record is that the judgment of the district court must be AFFIRMED.